**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STEPHEN MARKUN,

      Plaintiff

    v.

STRYKER EMPLOYMENT
COMPANY, LLC,

      Defendant/Counter-
      Plaintiff

   v.

STEPHEN MARKUN and
MEDTRONIC, INC.,

    Counter-Defendants.

**CASE NO: 8:24-CV-1474-JLB-LSG**

**<u>DEFENDANT/COUNTER-PLAINTIFF STRYKER EMPLOYMENT
COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW</u>**

Defendant/Counter-Plaintiff Stryker Employment Company, LLC ("Stryker"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves for summary judgment on Plaintiff/Counter-Defendant Stephen Markun's ("Plaintiff" or "Markun") claims for Sex Discrimination-Mixed Motive under Title VII (Count I) and the Florida Civil Rights Act ("FCRA") (Count III), Sex Discrimination-Single Motive under Title VII (Count II) and the FCRA (Count IV), and Retaliation under the Florida Whistleblower's Act ("FWA") (Count V).

## I.    <u>INTRODUCTION</u>

At Stryker's June 2023 regional sales meeting, Area Director Ryan Campbell ("Campbell") observed Stephen Markun ("Plaintiff" or "Markun"), visibly intoxicated, strike a female coworker, Briana Smith ("Smith"), on the buttocks with a ping-pong paddle. Stryker investigated and substantiated that Markun, while intoxicated, engaged in unwelcome physical contact at a work event, in violations of Stryker's Code of Conduct, Harassment-Free Workplace Policy, and Drug-Free Workplace and Prohibited Substances Policy. For this reason and no other, Stryker terminated Markun's employment, consistent with its policies and past practice.

Markun now claims Stryker fired him because he is male and later retaliated against him for filing a post-employment EEOC Charge. Markun's own sworn testimony forecloses his claims:

- Markun **admits** he drank heavily, became intoxicated, and blacked out that night; intoxication was the "only explanation" for his conduct. (Statement of Facts, hereafter "SOF" ¶¶ 34, 35.)

- Markun **admits** that if he struck Smith on the buttocks with a ping-pong

1

paddle, the conduct would be inappropriate, and would violate Stryker's Code of Conduct and harassment policy.  (SOF ¶ 46.)

- Markun **admits** no one at Stryker made negative comments about his sex. (SOF ¶ 52.)

- Markun **admits** that the termination decision-makers (Brendan O'Donnell and Stephanie Kennedy) did not discriminate against him because he is male, nor did Kennedy retaliate against him. (SOF ¶ 55.)

- Markun **admits** that he cannot identify any female employee who physically struck another Stryker employee and was treated more favorably (and Stryker terminated the only employee he knows who engaged in similar misconduct). (SOF ¶ 45.)

- Markun **admits** that he never complained of discrimination or retaliation while employed. (SOF ¶ 53.)

- Markun **admits** that he did not notify anyone at Stryker about his EEOC charge and does not know when Stryker received it. (SOF ¶ 64.)

On this record, there is no triable issue of fact as to sex discrimination or retaliation.

Accordingly, Stryker is entitled to summary judgment on every claim.

## I.    STATEMENT OF MATERIAL FACTS

### A. Stryker's Business

1.    Stryker is a global medical technology company that provides products and services in Orthopaedics, Medical and Surgical, and Neurotechnology. (Declaration of Brendan O'Donnell (hereafter "O'Donnell Dec."), Ex. H at ¶ 3.)

### B. Stryker's Policies Reflect Stryker's Commitment to an Environment that is Free from Discrimination, Harassment, and Retaliation.

2.    Markun began working for Stryker on December 9, 2004, as a sales representative. (Deposition of Stephen Markun (hereafter "Markun Depo."), Ex. A at 150:10-22, 232:7-9.)

3.    Stryker provides annual training and maintains workplace policies, including its Code of Conduct, Anti-Discrimination, Harassment-Free Workplace, and Drug-Free Workplace and Prohibited Substances policies. (Markun Depo., Ex. A at 205:22-206:10, 207:1-8, 208:22-209:7; Declaration of Amy Martyn (hereafter "Martyn Dec."), Ex. I at ¶¶ 7-15, Exs. 1-4.)

4.    Those policies prohibit discrimination, harassment, retaliation, and inappropriate workplace conduct, and they apply to all employees, including at company-sponsored events.  (Markun Depo., Ex. A at 205:7-17; Martyn Dec., Ex. I at ¶¶ 6, 18, Ex. 5.)

5.    The Harassment-Free Workplace Policy prohibits unwelcome physical contact, including "patting, pinching, or touching," and other conduct that creates an intimidating, hostile, or offensive work environment. (Markun Depo., Ex. A at 208:6-21; Martyn Dec., Ex. I at ¶ 11, Ex. 3.)

6.    The Drug-Free Workplace and Prohibited Substances Policy prohibits unauthorized alcohol use and forbids employees from being over-intoxicated by alcohol while on company time or engaged in work-related activities. (Markun Depo., Ex. A at 209:1-7; Martyn Dec., Ex. I at ¶ 15, Ex. 4.)

7.    Violations may result in discipline, up to and including termination. (Markun Depo., Ex. A at 210:1-4; Martyn Dec., Ex. I at ¶ 15, Ex. 4.)

### C. Markun Admits He Received, Reviewed, And Acknowledged Stryker's Policies, And That He Was Required To Comply With Each One.

8.    Markun received Stryker's employee handbook each year, reviewed it as

3

part of mandatory annual online training, and acknowledged it. (Markun Depo., Ex. A at 204:7–205:1.)

9.   Markun understood he was required to comply with Stryker's policies. (*Id.*, at 205:7–17.)

10.   Markun understood that Stryker prohibited workplace discrimination. (*Id.*, at 206:5–13.)

11.   Markun understood that "patting, pinching, or touching" constituted prohibited harassment. (*Id.*, at 208:16–21; 230:1–5.)

12.   Markun also understood that the Drug-Free Workplace and Prohibited Substances Policy applied at regional meetings. (*Id.*, at 230:19-231:2.)

13.   Markun understood that violating these polices, including by engaging in physical misconduct could result in termination. (*Id.*, at 209:18-210:1-4.)

**D. Stryker Disciplines Markun for Inappropriate Conduct in 2012.**

14.   At a 2012 sales meeting, Markun attended a dinner cruise where he yelled to another co-worker, "Dom said to show us your tits!" (Martyn Dec., Ex. I, at ¶ 21.)

15.   Markun **admitted** making that statement and Stryker documented a verbal warning. (Markun Depo., Ex. A at 174:17-19; Martyn Dec., Ex. I, at ¶¶ 21-22, Ex. 6.)

**E.   Markun's Tenure as a Stryker Neurosurgical Sales Representative.**

16.   At the time of his termination, Markun was a sales representative in Stryker's Neurosurgical business unit. (Markun Depo., Ex. A at 159:13-19.)

17.   Markun's job was to sell designated products within his assigned territory and to collaborate and work closely with his counterparts across Stryker's other divisions.

(*Id.*, 188:22-25, 382:21-383:15; 30(b)(6) Deposition of Ryan Campbell (hereafter "30(b)(6) Campbell Depo."), Ex. B at 134:25-135:15.)

18.    In June 2023, Markun worked in Stryker's Florida region, referred to here as the "Sunshine Region." (Markun Depo., Ex. A at 137:16-24, 341:6-7; Deposition of Brendan O'Donnell (hereafter "O'Donnell Depo."), Ex. C at 26:14-21.)

19.    That region included six other male sales representatives (Markun Depo., Ex. A at 137:16-24) and three female sales representatives (*Id.*, at 137:11–15), including Smith. (*Id.*, at 41:8-9; 57:25-58:3.)

20.    The representatives in that region reported to Brendan O'Donnell (male),[1] who reported to Area Sales Director Ryan Campbell (male). (*Id.*, at 31:20-25, 137:25-138:9.)

21.    Markun had a good relationship with Campbell. (*Id.*, at 99:14-18.)

22.     Markun also testified that he does not believe O'Donnell discriminated against him for being a male.  (*Id.*, at 106:12-17.)

**F.  Markun Assaults his Female Co-Worker While Intoxicated.**

23.    On June 7, 2023, the Sunshine Region attended a regional sales meeting in Bowling Green, Florida. (*Id.*, at 60:13-16.)

24.     Near the end of the night, as Campbell was preparing to play ping-pong with Markun and Smith, Campbell saw Markun – while visibly intoxicated – strike Smith on the buttocks with a ping-pong paddle. After the incident, Campbell called Markun

---

[1] In 2023, O'Donnell was one of 209 Regional Managers for Stryker. (Martyn Dec., Ex. I at ¶ 23). In 2023, Stryker had more than 27,800 employees throughout the United States, and O'Donnell supervised 11 sales representatives and one associate sales representative. (O'Donnell Dec., Ex. H at ¶ 4).

and explained what he saw, that Markun was too drunk, and that Campbell had to send Markun to his room. (*Id.*, at 15:22-16:7; Deposition of Ryan Campbell (hereafter "Campbell Depo."), Ex. F at 56:20-57:18, 97:7-98:5.)

25.    Markun said he did not remember hitting Smith on the buttocks with a ping-pong paddle while intoxicated: "**If – if that happened, I don't recall it.** And I need to call her and apologize if that happened." (Markun Depo., Ex. A, at 18:25-19:18; Campbell Depo., Ex. F at 97:7-98:5.)

26.    Markun then enrolled with Lifeworks for counseling for alcohol addiction and attended four or five sessions because, in his words, "if there's even an inkling of possibility that I did this, I want to talk to somebody about it." (Markun Depo., Ex. A, at 77:16-78:11.)

27.    Around the same time, he sent his resume to a former co-worker because he feared losing his job and wanted to "protect [him]self." (*Id.*, at 88:1-14.)

**G. Stryker Investigates the June 7, 2023 Incident.**

28.    On June 12, 2023, Campbell escalated the matter to his HR Leader, Stephanie Kennedy and a formal investigation was opened. (30(b)(6) Deposition of Stephanie Kennedy, (hereafter "30(b)(6) Kennedy Depo."), Ex. D, at 77:24-78:7, 78:21-79:9; Campbell Depo., Ex. F at 85:10-18.)

29.    Stryker's Employee Relations ("ER") team, including ER representatives Sarah Marie Puterbaugh and Heather Hubbard, conducted the investigation; they interviewed Markun, Smith and Campbell, gathered evidence, and documented ER's findings. (30(b)(6) Kennedy Depo., Ex. D at 35:22–36:16, 38:23–25; 80:23–81:3, Ex. 2.)

30.   Smith reported to ER that she saw Markun drink at least five or six alcoholic drinks over about three hours. (Deposition of Briana Smith Schnieder (hereafter "Smith Depo."), Ex. E at 151:13-152:12, Ex. 2, p. 15; Markun Depo., Ex. A at p. 173:14-19.)

31.   Smith reported that around 11:00 p.m., while she was about to play ping-pong as Markun's teammate against Campbell, Markun slapped her on the buttocks with his paddle. (Smith Depo., Ex. E at at 10:15-11:6.)

32.   Campbell likewise reported that Markun appeared intoxicated and that Campbell saw him smack Smith on the butt with a ping-pong paddle. (Campbell Depo., Ex. F at 56:20-25; 30(b)(6) Kennedy Depo., Ex. D at  Ex. 2, p. 20; Markun Depo., Ex. A at 15:22-16:7, 18:25-19:18.)

33.   On June 20, 2023, Puterbaugh interviewed Markun while Hubbard took notes (Martyn Dec., Ex. I, at ¶ 24, Ex. 7; Markun Depo., Ex. A at 168:11-169:2.)

34.   In that interview, Markun **admitted** that he drank excessively and testified that intoxication was "the only explanation" for his conduct. (Markun Depo., Ex. A at 169:5-6; 173:14-19.)

35.   He admitted he "had several drinks that day" (at least eight alcoholic beverages) and became so intoxicated that he blacked out and "didn't remember the very end of the night" (*Id.*, at 16:19-17:10, 60:20-61:6, 62:6-20, 63:6-16, 66:18-22, 77:4-9), but did remember that Campbell and Smith left "abruptly." (*Id.*, at 38:22-24.)

36.   During the interview, Markun did **not** deny the incident, and he did not raise

7

any concern about a personal relationship between Campbell and Smith. (*Id.*, at 175:19-176:1; Martyn Dec., Ex. I, at ¶ 24, Ex. 7.)

37.    ER's notes reflect that Markun was shocked, angry at himself, emotional, and repeatedly apologetic. (Martyn Dec., Ex. I, at ¶ 25, Ex. 7; Markun Depo., Ex. A at 169:15-170:2.)

38.    At the conclusion of the investigation, ER substantiated that Markun, while intoxicated, struck Smith on the buttocks with a ping pong paddle, in violation of Stryker's Code of Conduct, Anti-Harassment Policy, and Drug-Free Workplace and Prohibited Substances Policy. (30(b)(6) Kennedy Depo., Ex. D at Ex. 2, p. 26.)

39.    Markun testified that he has no complaint about the ER investigators and does not believe they discriminated or retaliated against him. (Markun Depo., Ex. A at 183:7-10, 183:24-184:2.)

40.    ER recommended termination to Kennedy. (30(b)(6) Kennedy Depo., Ex. D at 33:2-22; Markun Depo., Ex. A at 85:5-10.)

41.    Kennedy communicated the substantiated investigation findings and recommendation to Brendan O'Donnell. (O'Donnell Depo., Ex. C, at 9:19–10:9; Markun Depo., Ex. A at 85:5-10.)

42.    O'Donnell relied on the investigation's findings and agreed with ER recommendation in making the decision to terminate Markun. (O'Donnell Depo., Ex. C, at 10:10-25; Markun Depo., Ex. A at 85:5-10; Campbell Depo., Ex. F at 129:9-16; 30(b)(6) Kennedy Depo., Ex. D at 111:20-112:10.)

43.   Approximately one to two years prior to Markun's termination, Stryker had terminated another male employee, Matt Wells, for materially similar conduct, striking a female colleague on the buttocks with his hand. (Markun Depo., Ex. A at 81:19–82:4; O'Donnell Depo., Ex. C at Dep. 121:23-122:12.)

44.   Wells did not work in a territory managed by Campbell or O'Donnell. (O'Donnell Depo., Ex. C at 26:14-21; 123:23–124:1; Markun Depo., Ex. A at 83:6-8.)

45.   Markun is not aware of **any** incident in which a female employee physically struck another Stryker employee.  (Markun Depo., Ex. A at 143:2-6.)

46.   Markun **admitted** that if he struck Smith on the buttocks with a ping-pong paddle, that conduct would be inappropriate and would violate Stryker's Code of Conduct and harassment policy (*Id.*, at 81:2-18.)

47.   Stryker informed Markun of his termination during a June 29, 2023 conference call with O'Donnell, Campbell, and Kennedy. (*Id.*, at 85:11-22.)

48.   During that call, O'Donnell told Markun he was being terminated for violating Stryker's policies. (*Id.*, at 86:1-5.; O'Donnell Depo., Ex. C, at 9:3-10.)

49.   Markun testified that he does not know who made the termination decision or when it was made. (Markun Depo., Ex. A at 85:5-10.)

**H. Stryker Reassigns Markun's Territory to Other Sales Representatives.**

50.   After Markun's termination, O'Donnell reassigned Markun's former territory to several sales representatives, including Smith and two men (Dustin Pace and Alec Strahl). (*Id.*, at 39:25-40:9, 41:2-9; O'Donnell Depo., Ex. C at 137:3-138:16; 30(b)(6)

Kennedy Depo., Ex. D at 13:17-14:6; Campbell Depo., Ex. F at 128:12-24.)

51.    Markun does not know who made the reassignment decision. (Markun Depo., Ex. A at 39:21-24).

### I.    Markun Never Made any Complaints During his Employment.

52.    Markun testified that no one at Stryker ever made negative comments to him about his gender. (*Id.*, at 111:14-23, 127:5-7.)

53.    Markun never complained of discrimination or retaliation while employed. (*Id.*, at 103:15-17, 105:20-106:11.)

54.    Markun also never complained about O'Donnell. (*Id.*, at 103:12-14.)

55.    Markun testified that he does not believe O'Donnell or Kennedy discriminated or retaliated against him. (*Id.*, at 106:12-17, 183:20-23.)

### J.    Stryker Sends Markun a Cease and Desist Letter.

56.    In August 2023, O'Donnell learned that Markun had accepted employment with Stryker's competitor, Medtronic, Inc. ("Medtronic") (O'Donnell Depo., Ex. C at 46:13-21, 50:15-19; Deposition Transcript of Dustin Pace, Ex. G at 48:17-20.)

57.    O'Donnell also learned that Markun was allegedly telling Stryker employees and customers that Smith was having an extramarital affair with Campbell and was allegedly selling to his former Stryker customers. (O'Donnell Depo., Ex. C at 42:22-43:12; 46:13-21.)

58.    To protect the Region and support Smith, O'Donnell wanted to enforce Markun's non-compete obligations. (*Id.* at 44:9-45:7, 45:17-22.; 30(b)(6) Kennedy Depo., Ex. D 72:18-74:11.)

59. On September 8, 2023, at O'Donnell's request, Stryker's counsel sent Markun a cease-and-desist letter. (O'Donnell Dec., Ex. H at ¶ 11, Ex. 1; Markun Depo., Ex. A at 413:21-24, Ex. 27.)

60. The letter reminded Markun of his continuing obligations under his agreement with Stryker. Consistent with Stryker's ordinary process and the agreement, Stryker copied Medtronic to notify it of the agreement's existence. (O'Donnell Dec., Ex. H at ¶ 11, Ex. 1; Markun Depo., Ex. A at 414:19-22, Ex. 27.)

61. On September 15, 2023, Markun's counsel, Shaina Thorpe, responded and informed Stryker that Markun had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 3, 2023. (O'Donnell Dec., Ex. H at ¶ 12, Ex. 2; Markun Depo., Ex. A at 184:3-5.)

62. Through litigation, Stryker learned that the EEOC Charge had been e-mailed to talentaquisition@stryker.com, a general mailbox without a designated recipient. (30(b)(6) Kennedy Depo., Ex. D 69:9-23.; Markun Depo., Ex. A at 184:6-19.)

63. When Brendan made the decision to send the cease and desist letter, he did not know that Markun had retained counsel or filed an EEOC charge. (30(b)(6) Kennedy Depo., Ex. D at 69:2-8; O'Donnell Depo., Ex. C at 52:19-53:11; Markun Depo., Ex. A 184:17-19.)

64. Markun admitted he did not tell anyone at Stryker about the charge and does not know when Stryker received it. (Markun Depo., Ex. A at 184:6-19.)

65. Markun remains employed at Medtronic. (*Id.*, at 279:3-5.)

## II.    LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute of material fact
and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a);
*Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). Although the Court views the evidence
in the light most favorable to the nonmovant, the nonmovant must offer more than
speculation or conclusory allegations – that is, "the nonmoving party must make a
showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v.
Kaplan Univ.,* 780 F.3d 1039, 1050 (11th Cir. 2015).

## IV.    ARGUMENT

### A.    Markun's Sex Discrimination Claims Fail as A Matter of Law.

Markun asserts sex discrimination claims under Title VII and the FCRA.[2]
Courts analyze FCRA discrimination claims under the same framework as Title VII,
so the state-law claims rise or fall with the federal claims. *Alvarez v. Royal Atl. Devs.,
Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (FCRA claims "do not need separate
discussion and their outcome is the same as the federal claims"); *Hampton v. City of
South Miami,* 186 F. App'x. 967 n.2 (11th Cir. 2006) (same legal analysis for Title VII
and FCRA discrimination claims).

A plaintiff may proceed under either a single-motive theory or a mixed-motive

---

[2] Under Title VII, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for any "employer… to discharge any
individual, or otherwise to discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's… sex…" The FCRA, Fl. Stat.
§760.10(1)(a), contains materially similar language: it is unlawful for an "employer to discharge or to
fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to
compensation, terms, conditions, or privileges of employment, because of such individual's…sex…"

theory. *Quigg v. Thomas Cnty. Sch. Dist.,* 814 F.3d 1227, 1235 (11th Cir. 2016). Those are not separate "claims"; they are "alternative causation standards" for proving discrimination. *Id.* at 1235 n.4. Under a single-motive theory, Markun must show "that [sex] bias was the true reason for the adverse action." *Quigg,* 814 F.3d at 1235. Under a mixed-motive theory, he must show that sex bias actually "factored into an employer's decision, even if other reasons justified it as well." *McCreight v. AuburnBank*, 117 F. 4th 1322, 1331 (11 Cir. 2024) *citing Quigg*, 814 F. 3d at 1241.[3] He cannot meet either standard.

### 1. The Single-Motive Theory Fails.

A plaintiff proceeding on circumstantial evidence under a single-motive theory "must either satisfy the three-step burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or [present a] convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker ...." *Campbell v. Mayo Clinic,* No. 23-10966, 2024 WL 713921, at *1 (11th Cir. 2024) (internal quotation omitted). Markun can do neither.

### A) Markun Cannot Satisfy the Three-Step Burden-Shifting Framework.

Under *McDonnell Douglas*, Markun must show that: (1) he belongs to a protected

---

[3]  "The relevant difference between the two standards is that a claim" proceeding on the single-motive theory fails if an employer demonstrates that it would have made the same decision absent discrimination – i.e., regardless of an employee's sex – but a claim proceeding on a mixed-motive theory "can succeed based solely on the employer's reliance on a forbidden consideration" such as sex. *Hickman v. Fla. Dep't of Corr.,* No. 21-12433, 2022 WL 3372003, at *4 (11th Cir. Aug. 16, 2022).

class (male); (2) he suffered an adverse employment action (termination); (3) he was qualified to perform his job; and (4) Stryker treated similarly situated employees outside his protected class more favorably. *Lewis v. City of Union City, Ga.,* 918 F.3d 1213, 1220 (11th Cir. 2019). If he makes that showing, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If Stryker does so, Markun must then show that "the proffered reason was merely a pretext for discrimination." *Id.* Here, Markun cannot satisfy any stage.

### i. Markun Cannot Make a *Prima Facie* Showing Because He Fails to Identify a Similarly Situated Comparator.

Markun's claim fails at the *prima facie* stage because he has no comparator. A comparator must be "similarly situated in all material respects." *Lewis v. City of Union City,* 918 F.3d 1213, 1217, 1229 (11th Cir. 2019) (en banc). That means the comparator "engaged in the same basic conduct," was "subject to the same employment policy, guideline, or role," and shared the "same supervisor" and "the plaintiff's employment history." *Eliassaint v. RTG Furniture Corp.*, 551 F. Supp. 3d 1293, 1303 (M.D. Fla. 2021) (quoting *Earle v. Birmingham Bd. of Educ.,* 843 F. App'x 164, 166 (11th Cir. 2021)). Where, as here, the plaintiff cannot identify a single similarly situated employee treated more favorably, summary judgment is required. *Earle,* 843 F. App'x at 166 ("A plaintiff's failure to produce evidence showing that a single similarly situated employee was treated more favorably will preclude the establishment of a prima facie case"); *Wilson v. Collier County*, No. 2:21-cv-861-JLB-NPM, 2023 WL 8934020, at *9 (M.D. Fla. Dec. 27, 2023) (granting summary judgment on discrimination claim; "Mr.

14

Wilson cannot identify any similarly situated employees who were treated more favorably than him and therefore has failed to establish a prima facie case of race discrimination").

Markun has no comparator. He **admitted** at deposition that he does not know of any female employee who physically struck another employee and was not terminated. (SOF ¶ 45.) That admission alone ends the comparator inquiry. *See Wilcox v. TMCFM, Inc., d/b/a Rockstar Harley-Davidson*, No. 2:22-cv-00349-JLB-KCD, 2025 WL 2097299, at *7 (M.D. Fla. July 25, 2025) (granting summary judgment where plaintiff's comparators shared only generic similarities and where plaintiff "ma[de] no attempt to establish that they were subject to the same guidelines, that they engaged in the same misconduct as she did, or that she shares employment or disciplinary history with any of them"). As such, Markun cannot make a *prima facie* showing.

### ii. Stryker Had a Legitimate, Non-Discriminatory Reason.

Even if Markun could establish a *prima facie* showing (he cannot), Stryker easily satisfies its burden. It terminated Markun because he violated company policies by drinking to excess at a work event and striking a female coworker on the buttocks with a ping-pong paddle. That is a legitimate, nondiscriminatory reason as a matter of law. *Turnes v. Amsouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994) (employer's burden is "exceedingly light") (quoting *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir. 1994)); *Tamba v. Publix Super Markets, Inc.* 836 Fed. Appx. 765, 768 (11th Cir. 2020) (violation of policy in employee handbook was legitimate reason for termination); *Xingzhong Shi v. Montgomery*, 679 Fed. Appx. 828, 832 (11th Cir. 2017)

("An employee's violation of a company's work rules may constitute a legitimate, non-discriminatory reason for termination"); *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law…We are not in the business of adjudging whether employment decisions are prudent or fair").

### iii.    Markun Has No Evidence of Pretext

To show pretext, Markun must prove that Stryker's stated reason was false **and** that discrimination was the real reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not pretext for discrimination unless it is shown both that the reason was false[ ] and that discrimination was the real reason") (quotation omitted). "A plaintiff's failure to rebut even one nondiscriminatory reason is sufficient to warrant summary judgment for the employer…" *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1290-91 (11th Cir. 2018). Markun cannot satisfy either prong.

First, Markun does not (and cannot) show Stryker's reason was false. To the contrary, he admits that if he struck Smith on the buttocks with a ping-pong paddle, the conduct would be inappropriate, would violate Stryker's Code of Conduct, and would violate Stryker's harassment policy. (SOF ¶ 46.) He admits he was so intoxicated that he blacked out and that intoxication was the "only explanation" for his conduct. (SOF ¶¶ 34, 35.) And when Campbell confronted him, he did not deny

16

the conduct – he said, "If that happened, I don't recall it. And I need to call her and apologize if that happened." (SOF ¶ 25.)

These dispositive admissions defeat pretext. *Wilcox*, 2025 WL 2097299, at *5 (where "Plaintiff admits that the[ employer's reason for termination] are true," "Plaintiff cannot demonstrate that the reasons Defendant provided for termination are pretextual"); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("Admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct").

Second, Markun cannot tie any discriminatory intent to any decisionmaker. The Eleventh Circuit is clear: "[d]iscrimination is about actual knowledge and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261–62 (11th Cir. 2001). Markun testified that he does not know who made the termination decision or when it was made. (SOF ¶ 49.) He affirmatively disclaimed sex discrimination by the actual decisionmakers: O'Donnell did not discriminate against him for being male, and Kennedy did not discriminate or retaliate against him. (SOF ¶ 55.) He has no complaint about the ER investigators. (SOF ¶ 39.) And no one at Stryker ever made negative comments about his gender. (SOF ¶ 52.) Those admissions are fatal. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) ("the biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case") (citation omitted).

Third, the same protected-class inference undercuts any claim of discrimination. O'Donnell – the manager who made the termination decision – is

17

male, like Markun. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). (upholding summary judgment on discrimination claim where "the individuals who made the decision to demote and ultimately terminated Ehrhardt, were within the class of people protected" and explaining burden is higher to show discharge motivated by animus where decision-maker is within protected class).

Fourth, O'Donnell made the decision to realign Markun's accounts to multiple employees, including two men and one woman. That distribution does not support an inference that Stryker was trying to give Markun's territory with a woman sex. (SOF ¶ 50.)

In short, Markun cannot show that Stryker's reason was false, much less that sex discrimination was the real reason. Summary judgment is warranted.

### B) Plaintiff Cannot Establish A Convincing Mosaic

A plaintiff may also survive summary judgment by presenting a "convincing mosaic" of circumstantial evidence, such as "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell,* 26 F.4th 1243, 1250 (11th Cir. 2022). "[T]he convincing mosaic inquiry is identical to the final stage of the *McDonnell Douglas* framework: both ask whether there is enough evidence for a reasonable jury to infer intentional discrimination." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023) (citation omitted); *McCreight,* 117 F.4th at 1335 ("[T]he *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same

18

destination – the ordinary summary judgment standard. One approach is not more forgiving than the other on the final question, which is whether a reasonable jury could infer illegal discrimination"). Markun must "present the tiles and create the mosaic [rather than] expecting the court to piece it together for him." *Wilson*, 2023 WL 8934020, at *11.

There is no mosaic here. No one made sex-based comments. (SOF ¶¶ 52, 55.) There is no suspicious timing. There is no evidence that any female employee who engaged in similar misconduct was treated more favorably. And there is affirmative evidence of evenhanded enforcement: Stryker previously terminated another male employee for similar misconduct. (SOF ¶ 43.)

As shown above, Markun's own admissions confirm that Stryker's stated reason is true and that Stryker honestly believed it. Failure to rebut the proffered reason defeats the mosaic just as it defeats the *McDonnell Douglas* claim. *Holley v. Georgia Dep't of Corr.*, 845 F. App'x 886, 891 (11th Cir. 2021) (plaintiff failed to establish convincing mosaic of discrimination because he "did not present evidence that the [employer] acted arbitrarily, nor did he cast sufficient doubt on the [employer]'s proffered nondiscriminatory reasons" for rescinding his job offer); *Thomas v. Sheriff of Jefferson Cnty.*, Ala., No. 22-13875, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023) ("The issue is not whether the facts underlying the discharge are true but whether the employer believed them").

The undisputed evidence confirms a straightforward record of misconduct and discipline – not a convincing mosaic of discrimination. Because Markun fails on every

19

mosaic category, summary judgment is warranted.

### 2. The Mixed Motive Theory Fails.

Markun fares no better under a mixed-motive theory. To proceed under that theory, he must present evidence from which a reasonable jury could find that his sex was a motivating factor in Stryker's decision. *Quigg*, 814 F.3d at 1239. Even under the "lesser, mixed- motive standard," there must be evidence that sex actually played a role. *Breeding v. Integrated Behav. Health, Inc.,* No. 22-10374, 2023 WL 3735341, at *3 (11th Cir. May 31, 2023).

There is none. Markun testified that no one at Stryker made negative comments based on sex and that the relevant managers and investigators did not discriminate against him for his gender. (SOF ¶¶ 39, 52, 55.) There is no evidence that anyone discussed, considered, or referenced his sex when deciding to terminate him. The record instead shows that Stryker terminated him for intoxication and unwelcome physical contact at a work event. No reasonable jury could find that sex was a motivating factor in that decision.

### B.   Markun's Florida Whistleblower Act Claim Fails as a Matter of Law.

Florida Statute § 448.102(2) bars retaliation against an employee for "[p]rovid[ing] information to, or testif[ying] before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer." Courts analyze FWA retaliation claims under the same framework used for Title VII retaliation. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945 (11th Cir. 2000).

To make a prima facie case, Markun must show: "(1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity; and (3) there was some causal relation between the events." *Batz v. City of Sebring*, 794 F. App'x 889, 901 (11th Cir. 2019); *Rutledge v. SunTrust Bank*, 262 Fed.Appx. 956, 958-59 (11th Cir. 2008). Here, he cannot show the second or third element.

### 1. The Failure-to-Reinstate Theory Fails.

Markun appears to rely first on Stryker's failure to reinstate him. That theory fails for a simple reason: he was terminated **before** he engaged in the alleged protected activity. His EEOC charge post-dated his June 29, 2023 termination. (SOF ¶¶ 53, 61, 62.) A post-termination complaint cannot have caused the earlier termination. *Stevenson*, 2023 WL 2664199, at *11 ("Stevenson did not complain to Frontier or the EEOC before his termination… Thus, he cannot claim his termination was caused by his statutorily protected activity of filing a Charge").

Nor does "failure to reinstate" fit the FWA's definition of retaliatory personnel action, which focuses on "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." Fla. Stat. § 448.101(5). Markun cites no authority holding otherwise.

### 2. The Cease-and-Desist Letter Is Not an Adverse Action and Was Not Caused by Protected Activity.

Markun's only remaining FWA theory rests on Stryker's September 8, 2023

21

cease-and-desist letter to him and Medtronic. That theory fails for at least three independent reasons.

First, the letter is not a materially adverse action under the FWA's definition of "retaliatory personnel action." Fla. Stat. § 448.101(5). Sending a cease-and-desist letter to a former employee enforcing contractual rights is not a personnel action of any kind, much less one materially adverse to the terms and conditions of employment. Markun cites no authority holding otherwise. Nor has Markun shown that the letter would have dissuaded a reasonable worker from engaging in protected activity. *See Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (employee's burden is to "show that a reasonable employee would have found the challenged action materially adverse...mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge"). Stryker simply enforced its contractual rights under Markun's agreement and notified Medtronic as the agreement contemplated. *See Kelly v. First Data Corp.,* No. 1:19-cv-372, 2020 BL 28436, 2020 WL 419440 (S.D. Ohio Jan. 27, 2020) (Defendant's "assertion of contractual rights cannot constitute retaliation; otherwise, an employer could never enforce a non-compete agreement against any employee who asserted any type of employment discrimination claim.")

The letter did not cost Markun his Medtronic job. He remains employed there. (SOF ¶ 65.) And it plainly did not deter him from pursuing his claims; he proceeded with an EEOC charge and then this lawsuit.

Second, Markun cannot show causation, because Stryker's decisionmaker had

no knowledge of any protected activity when the letter was sent. Eleventh Circuit law is clear: "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action… That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him". *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000.) The record is uncontradicted on this point. O'Donnell, who asked counsel to send the cease-and-desist letter, testified that he did not know Markun had filed an EEOC charge when he made that decision. (SOF ¶ 63.) Kennedy likewise testified that Stryker was unaware of the charge when the letter was sent. (*Id.*) Markun admitted that he did not notify anyone at Stryker of the charge and does not know when Stryker received it. (SOF ¶ 64.) Without knowledge, there can be no retaliatory motive as a matter of law. *Brungart,* 231 F.3d at 799.

Third, Stryker had legitimate, independent reasons to send the letter. O'Donnell learned that Markun had accepted employment with Stryker's direct competitor, Medtronic; that Markun was allegedly disparaging Smith by telling employees and customers that she was having an affair with Campbell; and that Markun was allegedly selling to his former Stryker customers. (SOF ¶¶ 56, 57.) Enforcement of contractual non-compete obligations under those circumstances is a legitimate business action – not retaliation. *Cf. Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) (employer "had legitimate non-discriminatory reasons... and it remained free to act on those reasons").

In the absence of an adverse action, the Court cannot find a causal connection.

23

See, e.g., *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000) (stating that a causal connection is established if plaintiff proves that they would not have been fired "but for" their assertion of FLSA rights); *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 823 (11th Cir. 2008) (requiring a "close temporal proximity" between the time that the employer learned of the complaint and their subsequent adverse action).

The FWA claim therefore fails.

### C. Markun Cannot Recover Punitive Damages.

Punitive damages are reserved for extraordinary misconduct. Under Title VII, a plaintiff must prove that the employer acted "with malice or with reckless indifference" to federally protected rights. *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 529–30 (1999). In the Eleventh Circuit, punitive damages also require action by a decisionmaker who is high enough in the corporate hierarchy that his or her acts can be imputed to the employer. *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1332 (11th Cir. 2018) (applying *Dudley v. Wal-Mart Stores, Inc.,* 166 F.3d 1317, 1323 (11th Cir. 1999)). Florida law is similar: punitive damages against a corporation require proof that its "officers, directors, or managers" knowingly condoned, ratified, or consented to intentional misconduct or gross negligence. Fla. Stat. § 768.72(2), (3)(b); *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016) (punitive damages are appropriate only for truly "culpable conduct," "equivalent to the conduct involved in criminal manslaughter"); *Naso v. Hall,* 338 So. 3d 283, 289 (Fla. 4th DCA 2022).

24

Markun has no evidence that comes close to that standard. Stryker promptly investigated a report that Markun, while intoxicated at a company event, struck a female coworker on the buttocks with a ping-pong paddle. The victim and an eyewitness corroborated the misconduct. Markun admitted he was drunk, blacked out, and could not recall the end of the night. Stryker then enforced its policies. That is ordinary workplace discipline, not malice or reckless indifference.

The corporate-hierarchy requirement fails as well. In 2023, O'Donnell was one of 209 Regional Managers, Stryker had more than 27,000 employees in the United States, and O'Donnell supervised 12 employees. (O'Donnell Dec., Ex. H at ¶ 3; Martyn Dec., Ex. I at ¶ 24.) Under Eleventh Circuit law, that is not "higher management" for punitive-damages purposes. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1280–81 (11th Cir. 2002) (explaining that punitive damages are appropriate only when the decisionmaker is "high enough" in the corporate hierarchy). Summary judgment should therefore be entered on punitive damages as well.

## V.    CONCLUSION

The record presents no genuine dispute of material fact. Stryker terminated Markun because he became intoxicated at a work event and struck a female coworker on the buttocks with a ping-pong paddle. Markun has no evidence that his sex played any role in that decision, no comparator, no pretext, and no viable retaliation claim. Stryker therefore respectfully requests that the Court enter summary judgment in its favor on all counts.

DATED:  June 16, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Kelly A. Cohen*

Kelly A. Cohen, FL Bar No. 66182
kcohen@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California  90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

Michele J. Beilke (*admitted pro hac vice*)
mbeilke@seyfarth.com
SEYFARTH SHAW LLP
601 South Figueroa Street, Ste. 3300
Los Angeles, California 90017-5793
Telephone: (213) 270-9600
Facsimile:  (213) 270-9601

JOHNSON JACKSON PLLC

By: */s/ Erin G. Jackson*
Erin G. Jackson, FL Bar No. 413097
ejackson@johnsonjackson.com
Meaghan K. Maus. FL Bar No. 1006137
mmaus@johnsonjackson.com
JOHNSON JACKSON PLLC
100 N. Tampa St., Suite 1800
Tampa, FL 33602
Telephone: (813) 580-8400
Facsimile: (813) 580-8407
Attorneys for Defendant/Counter-Plaintiff
STRYKER EMPLOYMENT COMPANY,
LLC

318592995v.25

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 16th day of June, 2026 true and correct copies of the foregoing Motion for Summary Judgment and Incorporated Memorandum of Law and Materials In Support of Its Motion for Summary Judgment were filed using the Middle District of Florida's CM/ECF system, through which these documents are available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Kelly A. Cohen*

325933005v.3